## HYNDS, EX'R, vs. IMBODEN.

To maintain an action, the plaintiff must show a legal right in himself to the thing sued for. Executors must show the death of the testator, and the grant to them, by competent authority, of the right to execute his last will and testament.

Profert of letters testamentary, or of administration, are necessary to enable an execu-tor, or administrator, as such, to maintain an action; and if this be omitted in the pleading, the plaintiff must fail.

And it seems that profert of letters, in general terms, not stating by what authority the letters were granted, is defective; but on oyer being craved, and the letters fully set out, the defect is cured.

Proof of a will before the county court, and grant of letters by the clerk thereof in vacation, confers on the executors no right to maintain an action.

The county court or judge has no right to take proof of a will, nor has the clerk of that court any power to grant letters testamentary or of administration; and letters so granted are a nullity.

The probate of wills, and grant of letters testamentary and of administration, appoint-ment of guardians, settlements of ex'rs, adm'rs, and guardians' accounts, are matters entirely within the jurisdiction of the probate court.

The powers and duties of the presiding judge of the county court, and of the judge of probate, are entirely separate, though lodged in the same individual; and their re-spective jurisdictions are as widely separated as those of either of the other judicial tribunals of the State.

The proof of a will before the judge, and the grant of letters and issuance thereof by the clerk, must be performed by them respectively, as judge, and clerk, of the pro-bate court.

THIS was an action of debt, determined in the Lawrence Circuit Court, in October, 1841, before the Hon. THOMAS JOHNSON, one of the circuit judges. David and Esther Hynds, ex'r and ex'x of John Hynds, deceased, sued Benjamin Imboden, counting on two notes executed to their testator. The defendant pleaded *actio non acerevit*, within five years. Replication that he did, within five years before suit was commenced, promise "as the plaintiff hath above complain-ed." Demurrer to replication, on the ground that this promise was not stated to be in writing; the demurrant obviously understanding the *promise* pleaded, to mean a new acknowledgment. Demurrer sustained, and leave given to amend declaration. An amended de-claration was afterwards filed, counting on two bonds of the same date, tenor, and effect, as the notes described in the original declara-tion, and concluding with this profert: "And the said David Hynds and Esther Hynds bring into court here the letters testamentary of the said John Hynds, deceased, whereby it fully appears to the court

that the said David Hynds and Esther Hynds are executors of the last will and testament of said John Hynds, deceased, and have the execution thereof."

The defendant craved oyer of the letters, and of the bonds sued on, which was granted, and then demurred to the declaration and letters testamentary, assigning for causes, a variance between the declaration and letters—the letters not properly granted, sealed or authenticated, and the will not proven in a court having jurisdiction. Demurrer sustained, and judgment for defendant, and writ of error. The letters testamentary were issued by the clerk of Crawford circuit and county courts, and recited probate of the will, before the judge of county court, in October, 1838.

*Pike & Baldwin*, for plaintiff.

*Fowler*, contra.

By the Court, RINGO, C. J.    The record and assignment of errors present, simply, this question: Are the letters testamentary granted to the plaintiffs as shown upon oyer valid? The plaintiffs, to show in themselves the legal title in, and right of, action on the writings obligatory, set forth in the declaration, without showing any assignment thereof from the payee, were bound to show such facts as would, by law, vest in them such title.    This they could not do, without showing the death of the payee, and the subsequent commission to them, by competent authority, of the execution of his last will and testament, or the administration of his estate, if he died intestate.    Consequently, in such cases, the law requires of the party suing, to make profert of the letters testamentary or letters of administration granted to him, to execute the will, or administer the estate of the person deceased, to whose rights, in respect to the things demanded, he claims to have succeeded, and whose legal representative he claims to be.    And if this be omitted, or the facts as stated, admitting them all to be true, fail to show in the plaintiffs such legal title to the thing demanded, the law, in either event, determines the pleading insufficient, and denies to him the assertion of any legal right thereto, until such title be

so shown. In the case under consideration, the declaration contains a profert in general terms of letters testamentary, granted to the plaintiffs, as executors of the last will and testament of John Hynds, deceased, which, however defective it may have been, on account of the omission to show when, or by what authority, the letters were granted, the defect in this respect is shown by grant of oyer of the letters, a certified transcript whereof was thereupon made parcel of the record, by a literal copy thereof being inserted in the defendants' pleading; whereby, according to the well established rule in such case, the law regards it as constituting a part of the previous pleading of the plaintiffs, and therefore the letters so shown upon oyer must now receive precisely the same consideration which they would have received if they had been literally copied into, and made to form a part of, the plaintiff's declaration, and thus the question of their validity is distinctly presented by the demurrer to the declaration.

The letters testamentary, of which oyer was had, contain a recital from which it appears that the testator, John Hynds, sen., deceased, late of the county of Crawford, did appoint the plaintiffs executor and executrix of his last will and testament, which on the 3d day of October, 1838, was proved according to law "before the judge of the county court, in and for the county of Crawford, and letters testamentary granted by the clerk in vacation," to the plaintiffs, on the 8th day of December, 1838, and amongst other things, a mandate is inserted therein, requiring said executor and executrix to render a true, just, and full account of the disposition made by them of all and singular the goods and chattels, rights and credits, which were of the said testator at the time of his death, "and the same exhibit to the *county court* of Crawford county, from time to time, according to law," and are attested as follows, viz: "In testimony whereof I have hereunto set my hand as clerk of the circuit court, and ex-officio clerk of the county court, and the seal of office, this 8th day of December, A. D. 1838.

[ Seal. ]                     *A. McLean, clerk.*"

From a careful consideration of the facts thus shown, we think it is manifest that the judge not only took the probate of the will in vacation, but also that, in taking it, he acted in his official capacity as

judge of the county court; and that the clerk, in granting these letters testamentary, acted also in his official capacity as clerk of the county court of Crawford county; and these facts present the question distinctly, whether the county court, at the date of the probate of said will, and the grant of said letters testamentary, had jurisdiction over the probate of wills, or the grant of letters testamentary. If that court possessed such jurisdiction, when these letters were granted, they are valid, and vested in the plaintiffs such legal rights in the choses in action of the testator, upon which this action is founded, as would enable them to maintain thereupon an action at law. If it did not, the letters in question are a mere nullity, and they cannot derive therefrom any right whatever.

The solution of this question depends mainly upon the interpretation to be given to the 10th section of the 6th article of the constitution, and the 2d section of an act of the general assembly, entitled "an act to establish county courts," approved November 7th, 1836, *St.* 1836, *p.* 179. The constitution, in the section cited above, amongst other things ordains, that the presiding judge of the county court, shall, "in addition to the duties that may be required of him by law, as a presiding judge of the county court, be a judge of the court of probate, and have such jurisdiction, in matters relative to the estates of deceased persons, executors, administrators, and guardians, as may be prescribed by law, until otherwise directed by the general assembly." The constitution, by the provisions here quoted, creates a tribunal by the name or style of "the court of probate," designates a certain officer, as a person who shall be judge thereof, and defines what jurisdiction may be conferred upon it by law; but does not, without the aid of some act of ordinary legislation, invest it with any jurisdiction whatever.

The statute of 7th Nov., 1836, cited above, declares, among other things, that the "court of probate," so constituted, "shall have the following jurisdiction, to wit: The taking probate of wills, the granting letters testamentary and administration, the appointment of guardians and the settlement of executors', administrators', and guardians', accounts: and thus the legislature, by the legitimate exercise of a power expressly reserved to that department of the government, in-

Hynds, ex'r, *vs.* Imboden.

vested in the court of probate, jurisdiction over the probate of wills and the granting of letters testamentary; which remained untouched by any statutory provision in force when the probate of the will in question was made "before the judge of the county court." But it is urged that the clause of the constitution above quoted, confers probate jurisdiction on an *individual*, and constitutes a court in that way. That he exercises the jurisdiction *in right of his office as county judge*, and that the probate business is but one branch of the jurisdiction of the county judge; and that he may well do any act within that jurisdiction, as county judge having probate jurisdiction, and consequently the letters testamentary granted, as in this instance, are valid.

The constitution does not, it is true, use language the most appropriate, in the creation of a court, but that such is its design is, we conceive too obvious to admit of any serious question or doubt, and it appears to us equally certain that it was also the design of that instrument to indicate distinctly one individual who should hold, or at least sit in that court, and that when sitting in that court, and then only, he should possess such jurisdiction as should be conferred on the court by the legislature, within the limits prescribed to its jurisdiction by the constitution; and that the respective jurisdictions of the county court and court of probate, should be as widely separated, and as distinct from each other, as that assigned to either of other judicial tribunals established thereby is from the others, notwithstanding the same person should sit in, or preside over, both. Consequently the presiding judge of the county court had not, in our opinion, when not acting as a judge of the court of probate, and not sitting therein, jurisdiction of the probate of wills, the probate whereof is said to be "a judicial act of the court having competent authority," *Toller on Ex'rs*, 76; nor had the clerk of the circuit court, when acting in any capacity other than that of clerk of the court of probate, any power or authority whatever to grant or issue letters testamentary, because the jurisdiction of this subject matter was at that time vested in the court of probate only; and inasmuch as neither the judge nor clerk acted in this capacity when the will was proven, and the letters testamentary granted, both acts are void. The pleading therefore, in our opinion, fails to show a valid probate of the last will and testament

of John Hynds, or valid letters testamentary granted to the plaintiffs; or to show in them any legal interest in, or right to, the writings obligatory, upon which the action is based, as would enable them to maintain this action; and for these reasons, the court correctly sustained the demurrer to the declaration, and thereupon gave final judgment for the defendant, which ought to be, and is hereby, in all things affirmed, with costs.